TOOMATA, PUAINA, VAILUU, MAIAVA S.,
TUITELE and SAMANA, all of Leone, Plaintiffs

v.

VEA, ANA and FERETI of Leone, Defendants

No. 13-1950

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Autai" in Leone]

September 20, 1950

564

A. A. MORROW, *Chief Justice.*

DECISION

Heard at Fagatogo August 15, 16, 17, 1950.

Toomata *pro se;* Puaina *pro se;* Salavea O. for Vailuu; Maiava *pro se;* Laipuisi for Tuitele; Pulou for Samana; Save, Pita and Failautusi for Vea, Ana and Fereti.

MORROW, *Chief Justice.*

Pita and Failautusi, the proponents, who are lineal descendants of one Eseta, filed their application with the Registrar of Titles to have the land Autai in the village of Leone registered in the name of Vea, Ana and Fereti, children of the said Eseta. A survey of the tract accompanied the application. Vailuu, Toomata, Puaina, Maiava S., Tuitele and Samana, all chiefs of Leone, each filed an objection to the proposed registration claiming that a part of the surveyed tract was the communal family land of his fam-

ily. Hence this litigation. Section 905 of the A. S. Code. The court viewed the land in the presence of all parties prior to the hearing. At the hearing it developed that Vea and Fereti are dead; that Ana is an old lady residing in Western Samoa.

This surveyed land, along with about 50 other pieces, all small tracts, was originally surveyed in 1942 when the airstrip at Leone was being constructed by the Seabees. It was marked on the plat as the property of Sekio Avegalio. It took about a month to make the entire survey, many of the tracts being on the airstrip while the others were either adjacent or close to it. In 1949 Pita and Failautusi had a re-survey made of the land now in dispute. The surveyor used the bearings and distances of the first survey in making the re-survey, merely tracing the old survey on the ground.

We do not believe that the circumstances under which the first survey was made warrant the conclusion that it was correct. Failautusi and Pita claim that all the objectors were present when the first survey of the disputed tract was made and told the surveyor that the boundary lines he was following were correct. Tuitele denied that he was present as did Maiava, Samana, Vailuu and Puaina. However, the evidence indicates that Salavea was present at the first survey to represent Puaina. Sekio Avegalio, the brother of Pita and the father of Failautusi, was present and had a part in pointing out the boundary lines, as he claimed them to be, to the surveyor. Sekio, now deceased, told the surveyor that the disputed land was his and the surveyor put Sekio's name down on that part of the plat covering it. Toomata testified that he was present a short time at the beginning of the survey of the disputed tract but left when he was assured by Sekio that the survey would not be used as a basis for an application for registration of the land. Since the coconut trees on the airstrip and the adjoining

land were being cut down and any marked boundaries in the area would mostly disappear, it became necessary to make the survey in order that people owning the various tracts of land involved could later identify their property so as to make a claim for war damage thereto. It appeared that the owners were not very much concerned over whether the boundaries of their lands as shown on the survey were correct but were concerned with getting their names on the plat so that they could make claims for damages. Inasmuch as it had been publicly announced that the survey was for the purpose of letting land owners make claims at a later date it was only natural, since the surveys were going to be used for that purpose, and not for registering the land, that they would be concerned much more with getting their names down on the plat than they would be in having the boundaries literally correct. Also Narruhn who assisted the Seabees in making the original survey testified "No one seemed to bother about that (referring to the correctness of boundaries) so long as we got their names down."

At the time the original survey was made there was a very distinct possibility that the Japanese would attempt to take the Island of Tutuila. The airfield had to be rushed in order that it be ready for any possible attack. Most of the able bodied men including matais of Leone were employed at various places on the island in connection with defense work. Under these circumstances it is not at all probable that the able bodied matais themselves would be present when the survey was made. It is much more likely that a few old matais and women and children would be the only ones present to point out the boundaries to the surveyors. The court believes the testimony of the matais (objectors) who testified they were not present when the survey was made. This court knows that the Samoan matai knows the boundaries of his land much more accurately

than the young men, women and children in the family (clan). That is a part of his business. It is not the business of the young men, women and children. We think in the light of the circumstances and the testimony of the objectors that the boundaries of this piece of land as pointed out by Sekio and women and children to the surveyor were incorrect. That is a logical conclusion from the circumstances and the evidence of the objectors. We do not place much confidence in the correctness of a boundary pointed out by women and children. Pita was in New Guinea at the time the first survey was made. Obviously he knows nothing about it but hearsay.

■ The testimony in favor of each of the objectors was to the effect that a part of his communal family land was included in the tract offered for registration when the original survey of it was made. While there was a conflict in the testimony we are of the opinion that the evidence clearly preponderates in favor of the view that parts of the Tuitele, Toomata, Maiava, Samana, and Puaina lands were included in the survey through error and we so hold.

"It is elementary that in civil cases a mere preponderance of the proof is all that is necessary to establish the point in issue . . ." I Jones, Evidence (4th ed.) 6.

Objector Vailuu claimed that a part of his communal family land was likewise included and gave evidence in support of the claim. Pita and Failautusi both testified that the part claimed by Vailuu was cleared from the bush originally by Eseta and her husband Leautoa, occupied and claimed by Eseta as her individually owned land. There was no testimony by anyone in a position to know the facts as to whether Eseta claimed the land as her own or whether it was cleared by her and her husband and claimed by them as matai land of her family. It was certainly cleared and occupied by 1901 and probably at a much earlier date. No witness in this case was old enough

to have had knowledge of Eseta's intention at the time other than through hearsay which is not trustworthy.

The decision in the case of *Fiu v. Uo Sopoaga, Eseta Hahn, Vea, Ana and Fred Hahn,* No. 11-1907, decided by the High Court on January 14, 1910, shows that Eseta and Fred Hahn were the grantees in an informal deed of the land Logologo dated May 25, 1901. The evidence in the instant case is to the effect that Fred Hahn was the second husband of Eseta, Leautoa being her first husband. It would follow if Eseta and her husband Leautoa cleared the land involved in this case that the clearing must have occurred before she was married to Fred Hahn, unless she had two husbands at once, of which there is no evidence. Since Fred Hahn was her husband on May 25, 1901 this property must have been cleared before May 25, 1901.

The decision of the High Court in the above case also covered the point that Eseta was on April 24, 1906, a member of the family of Fiu Vailuu, the predecessor in matai title of the objector Vailuu. A portion of the abovementioned decision reads:

"Eseta's right in the land on April 24, 1906, therefore was merely that of a member of the family of which Fiu Vailuu was the head, and not such a right as would be capable of alienation by deed without the consent of Fiu Vailuu.

"Let a decree therefore issue cancelling the quit claim deed of April 24, 1906, and declaring same to be null and void."

The issue as to whether Eseta was a member of the Vailuu family was decided in favor of the Vailuu. The deed cancelled was one executed on April 24, 1906 by Eseta of the land Logologo to Vea, Ana and Fred Hahn (Fereti), her children.

The testimony in this case was that Vea was the daughter of Eseta and her first husband Leautoa while Fereti (Fred Hahn) and Ana were the children of Eseta by her second husband Fred Hahn. Pita is the son of Vea.

Sekio, now deceased, was his brother and the father of Failautuai. Upon the well established principle of estoppel by judgment, Ana, the living daughter of Eseta, and Pita and Failautusi, grandson and great grandson respectively of Eseta, through whom proponents and Ana make their claim, cannot question the finding in the case decided in 1910 that Eseta was a member of the Vailuu family.

"It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief." 30 Am.Jur., Title, Judgments, Sec. 178.

We think that Ana, Pita and Failautusi, all blood descendants of Eseta, are in privity with her.

"Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right. It has been declared that privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and that the rule is to be construed strictly to mean parties claiming under the same title. Under this rule, privity denotes mutual or successive relationship to the same right of property, and there is privity within the meaning of the doctrine of res judicata where there is an identity of interest and privity in estate, so that a judgment is binding as to a subsequent grantee, transferee, lienor of property. ... There are also cases in which it is held that the requisite privity may result from representation, from blood relationship, or from law." 30 Am.Jur., Title, Judgments, Sec. 225.

"A fact or question which was in issue in a former suit, and was there judicially passed on and determined by a domestic court of competent jurisdiction, is conclusively settled by the judgment therein, as far as concerns the parties to that action and persons in privity with them, and cannot be again litigated in any future action between such parties or privies, in the same court or in any other court of concurrent jurisdiction, on either the same or a different cause of action, while the judgment remains unreserved, unmodified, or unvacated by proper authority. This doctrine of the conclusiveness of judgments is sometimes referred to alternatively as the doctrine of judicial estoppel; and, as judicially noted, it is simple and universally recognized in almost innumerable cases, the only difficulty or conflict being in the application to particular cases." 50 C.J.S., Title, Judgments, Sec. 686.

█ It is our conclusion that the former decision in 1910 makes it mandatory upon this court to find that Eseta was a member of the Vailuu family, and we do so find. The fact that Pita accepted $5.00 of the Vailuu family's war-damage claim money is a very strong circumstance indicating that Pita, the grandson of Eseta, is a Vailuu family member despite the fact that he seems to have transferred his allegiance to another matai. A Samoan may be a member of more than one family at the same time.

█ It is a historical fact when the young men and young women of a clan cleared bush land, occupied it, and claimed it that they claimed it in behalf of their matai as owner. The custom of claiming cleared land in behalf of the matai has prevailed in Samoa for hundreds of years. It is a well established custom and a custom of which this court may take judicial notice. It is a matter of common knowledge.

"Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Other common statements of the rule are that the courts will take notice of whatever is, or ought to be, generally known within the limits of their jurisdiction; and that they ought not to assume ignorance of, or exclude

571

from their knowledge, matters which are known to all persons of intelligence." 31 C.J.S., Title, Evidence, Sec. 9.

It has been the custom for Samoans to live in clans for more than a thousand years. A clan is headed by the matai. There was no central government in Tutuila prior to 1900 capable of protecting human life, liberty and property. Related biological families had to bind themselves together in clans for protection. It was only natural that when land was cleared by young men and young women that they should claim it in behalf of their clan and that is what they normally did. The clan was the unit not the individual.

 We have concluded from the evidence that whatever part of the disputed tract was cleared by Eseta and Leautoa was cleared and occupied prior to April 25, 1901 when she was the wife of Fred Hahn, her second husband. At that time western ideas of individual ownership of property had not permeated Samoa. Western culture had influenced Samoans in Tutuila only slightly. Individual ownership of land was practically unknown. In the absence of any satisfactory evidence as to whether Eseta claimed the land in behalf of the Vailuu family or as her individual property we must be guided by the presumption that she claimed it as the communal family land of her clan. A presumption

"is the conclusion of law which the court draws of the existence of one fact from others already proved. The genesis of any presumptive concept is dependent upon the character of the particular presumption. Thus, some presumptions have their origin in broad common law concepts or statutes, while others are founded upon basic principles of justice, laws of nature, the experienced course of human conduct and affairs, or the connection usually found to exist between specific agencies. But, in any event, presumptions must always conform to the commonly accepted experiences of mankind and the inferences that reasonable men would draw from such experiences. *Thus, a practice, if well established, is presumed to have been followed in individual cases, and is accepted as sufficient proof*

*of the fact in question where primary evidence of such fact is lacking* (emphasis ours)." 20 Am.Jur., Title, Evidence, Sec. 158.

 In view of the well established custom of the Samoans to clear bush land, occupy it and claim it in the name of their matai at the time this land must have been cleared we must presume, in absence of any satisfactory evidence to the contrary, that Eseta claimed it in the name of her matai Vailuu. It therefore became Vailuu family land.

"The customs of the Samoans not in conflict with the laws of American Samoa or the laws of the United States concerning American Samoa shall be preserved." Sec. 2, A. S. Code.

The court will not destroy the customs of the Samoans through judicial legislation.

"Title to bush land is gotten by occupation thereof under a claim of ownership." *Leasiolagi v. Fao,* No. 12-1949 (Am. Samoa).

In the case of *Soliai v. Lagafua,* No. 5-1949 (Am. Samoa) we said:

"Occupation coupled with a claim of ownership will establish ownership to what was bush land before occupation. See 2 Blackstone 8. The view that the occupant who first takes possession of land with the intention of having it as his own thereby becomes the owner of it is approved in Maine's Ancient Law (3rd Am. ed.) at p. 238. This doctrine of acquisition of original title by the first occupant, accompanied by claim of ownership, was approved by this court in the case of *Faataliga v. Fano,* No. 80-1948 (Am. Samoa)."

In *Soliai v. Levu,* No. 6-1949 (Am. Samoa) we said:

"This court judicially knows that when the members of a Samoan family took possession of bush land and used it in the early days ownership was claimed not by such members in their own right but in behalf of their matai as owner of the communal family property."

It is our conclusion that a part of the land offered for registration in this case is the communal family land of the Vailuu.

573

It is not disputed that Sekio Avegalio purchased a piece of land from Tuiteleleapaga and that such piece is included in the surveyed tract sought to be registered. That is admitted by all the objectors. That land, Sekio leaving no will, became the property of his heirs upon his death. It was admitted by all parties to this litigation that it was his individually owned property and not communal family land.

The court cannot direct the registration of any of the land included in the survey. There was no evidence whatever as to the length and bearings of the boundaries of that part of the land included in the tract sought to be registered which we find to belong to the Tuitele title. Likewise the boundaries of those parts of the land, which the court finds to be the communal family property of the Toomata, Maiava, Samana, Puaina, and Vailuu titles respectively, were not established with respect to length and bearing by evidence. The same is true with respect to the boundaries of that part of the land purchased from Tuiteleleapaga by Sekio Avegalio which is in the tract.

This court will not direct registration of land which cannot be defined by metes and bounds. There are entirely too many uncertainties connected with land not so defined to warrant our directing its registration. We must therefore merely direct that the Registrar of Titles deny the application of Pita and Failautusi to have the land offered for registration and registered in the name of Vea, Ana and Fereti and it is so ORDERED. Furthermore land could not be registered in the names of Vea and Fereti. They are both dead. A dead person is so much clay. He cannot own property.

Costs in the amount of $75.00 are hereby assessed against Pita and Failautusi, each to pay $37.50. Costs are to be paid within 30 days.